## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ROSABELLA DUGGER, | Case No. 1:23-CV-00181-LF-SCY |
| Plaintiff, | (Formerly Case No. D-202-CV-202300658 in the Second Judicial District Court of Bernalillo County, New Mexico) |
| v. | |
| ANTHONY ANDERSON, TRAVIS PARKER, TRUE BULLION, LLC d/b/a GSI EXCHANGE, LLC, CRYPTO KNIGHT, LLC, and IRA Bitcoin, LLC, | Magistrate Judge Laura Fashing Magistrate Judge Steven C. Yarbrough |
| Defendants. | |

### ANSWER TO FIRST AMENDED COMPLAINT

Defendants Anthony Anderson, Travis Parker, True Bullion, LLC d/b/a GSI Exchange, LLC, Crypto Knight, LLC, and IRA Bitcoin, LLC (collectively, the "Defendants"), by and through their attorneys, Affordable Law, P.C., and for their answers to Plaintiff's First Amended Complaint, state as follows:

### NATURE OF CASE

1.  This action arises because in late 2017 Defendant Anderson personally persuaded Ms. Dugger, an existing customer of GSI, to divest from an annuity product she had previously purchased on her own accord and to reinvest the proceeds into Bitcoin (BTC) through Defendant Anderson and his companies.

    **Answer: Admit only that Plaintiff was an existing customer of GSI Exchange, LLC, which is a d/b/a of Defendant True Bullion, LLC, and that Plaintiff invested in Bitcoin through Defendant Crypto Knight, LLC. The remaining allegations are denied.**

2.  At Defendant Anderson's direction, Ms. Dugger wired $50,000 to Crypto Knight on December 11, 2017, which was then used to purchase 2.5172 BTC near the top of the 2017

bull market at an average price of $16,883 per BTC.

**Answer: Admit only that Plaintiff wired $50,000 to Defendant Crypto Knight on December 11, 2017, which was used to purchase 2.5172 BTC at an average price of $16,883 per BTC. The remaining allegations are denied.**

3.  Defendants Anderson and Parker, through the Defendant Companies, exploited Ms. Dugger's trust by assessing her a 15% commission for the purchase—amounting to an immediate loss to her of $7,500—without first informing her of the charge, thus causing her to purchase approximately 0.4444 less BTC than she otherwise would have.

**Answer: Denied. Defendants informed Plaintiff of the 15% transaction fee over the phone prior to her December 11 payment, then received her written approval through an Investment Direction Form, attached as <u>Exhibit A</u>, on December 12, 2017.**

4.  One year after her purchase, Ms. Dugger's $50,000 investment had retraced nearly 84% to a total value of approximately $8,110 ($3,222 per BTC).

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph, and therefore deny this Paragraph.**

5.  Despite not being licensed as a financial institution or a broker-dealer, Defendants assumed responsibility for maintaining custody of Ms. Dugger's Bitcoin and provided her with statements upon request attesting to her outstanding balance.

**Answer: Defendants deny that they "assumed responsibility for maintaining custody" of Plaintiff's Bitcoin, or that they needed to be a financial institution or a broker-dealer for the work performed for Plaintiff. The remaining allegations in this Paragraph are admitted.**

6.  In July and August 2021, Ms. Dugger contacted Defendants Anderson and Parker at various times with the intention of selling her Bitcoin and taking considerable profits. At that time, Bitcoin's price was on an upward ascent, oscillating between approximately $34,213 on July 24 and $48,907 on August 31.

**Answer: Admit that Plaintiff contacted Defendants Anderson and Parker in July and August 2021 with an intent to sell the Bitcoin. Defendants are without the knowledge and information sufficient to form a belief about the truth of the remaining allegations in this Paragraph, and therefore deny the remaining allegations of this Paragraph.**

7.  In response to her request, Defendant Parker informed Ms. Dugger that the Defendants had lost access to her Bitcoin holdings due to having improperly stored the cryptographic key required to access them and that the odds of recovering her Bitcoin were slim.

**Answer: Denied.**

8.  In reality, as shown in Defendant Anderson's own emails to Ms. Dugger, the Defendants had lost access to Ms. Dugger's property sometime around August 2020, nearly a year prior to notifying her. Moreover, despite Defendants' protestations, due to the exponential number of possible private key configurations, it is reasonable to assume that this loss is permanent.

**Answer: Defendants deny that they "lost access" to Plaintiff's property. Defendants deny that "it is reasonable to assume that this loss is permanent." The remaining allegations in this Paragraph are admitted.**

9.  To date, Ms. Dugger has yet to receive restitution or compensation from the Defendants in any form. She brings this action to recover the full value of her initial investment, the undisclosed commission, lost profits, interest, costs, attorney's fees, treble and punitive damages.

**Answer: Defendants deny that Plaintiff is entitled to the relief requested. Further, Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

## PARTIES

10. Plaintiff Rosabella Dugger is, and at all relevant times has been, a resident of Albuquerque, New Mexico. She is 84 years old and has limited experience investing in digital assets.

3

**Answer: Admit on information and belief that she is a resident of Albuquerque, New Mexico, and that she is 84 years old. Defendants are without the knowledge and information sufficient to form a belief about the truth of the remaining allegations in this Paragraph, and therefore deny the remaining allegations in this Paragraph.**

11.  Defendant Anthony Anderson is the managing member and control person of True Bullion, LLC, d/b/a GSI Exchange; Crypto Knight, LLC; and IRA Bitcoin, LLC. He is listed as True Bullion's registered agent in California and Florida. On information and belief, he is a citizen of Florida. His acts and omissions caused Ms. Dugger's property to become unrecoverable.

**Answer: Defendant Anderson admits that he is the managing member and control person of True Bullion, LLC d/b/a GSI Exchange and Crypto Knight, LLC. IRA Bitcoin, LLC is a d/b/a of Crypto Knight, LLC. He also admits that he is True Bullion's registered agent in California and Florida, and that he is a citizen of Florida. Defendant Anderson denies that his acts and omissions caused Ms. Dugger's property to become unrecoverable.**

12.  At all times relevant to this Complaint, Defendant Travis Parker has been an employee of various of the Defendant Companies. His LinkedIn profile states that he served as Chief Operations Officer for IRA Bitcoin from July 2017 to August 2022 and as well as Chief Compliance Officer at GSI during the overlapping period of April 2017 to the present. On information and belief, he is a citizen of Florida. His acts and omissions also caused Ms. Dugger's property to become unrecoverable.

**Answer: Defendant Parker denies that his actions and omissions caused Ms. Dugger's property to become unrecoverable. The remaining allegations are admitted.**

13.  Defendant True Bullion, LLC is a Delaware limited liability company that was incorporated on August 18, 2014. Its registered agent is Harvard Business Services, Inc., located at 16192 Coastal Hwy., Lewes, DE 19958. Since 2017, True Bullion has also been a registered foreign limited liability company in California and Florida with business addresses at 26635 Agoura Road, Suite 220, Calabasas, CA 91302; 3838 Oak Lawn Avenue, Dallas, TX 75219; and, 4440 PGA Boulevard, Suite 600, Palm Beach Gardens, FL 33410.

**Answer: Admit.**

14. Defendant True Bullion, LLC is both directly and vicariously liable to Ms. Dugger, the latter pursuant to *respondeat superior* for the actions of Defendants Anderson and Parker within the course and scope of their employment.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

15. Defendant GSI Exchange, LLC organized as a limited liability company in the state of Delaware on the same date-August 18, 2014-as Defendant True Bullion. On September 5, 2014, GSI filed to register as a foreign limited liability company with the California Secretary of State. On or about March 5, 2018, GSI represented to the California Secretary of State that it was a "coin stamp retailer." Alleging nonpayment of taxes, the California Franchise Tax Board subsequently forfeited GSI's registration in the state, and the company ceased to be authorized to do business in California as a foreign limited liability company.

**Answer: Denied. GSI Exchange, LLC is not organized as a limited liability company. It is a d/b/a of True Bullion, LLC, which was incorporated in Delaware on August 18, 2014, and organized as a foreign limited liability company in California on September 5, 2014. In the Statements of Information filed by True Bullion with the California Secretary of State, "coin stamp retailer" is listed as its type of business. Due to a scrivener's error, the California Franchise Tax Board temporarily forfeited True Bullion's registration in April 2021; the mistake was corrected, and the registration was restored on July 28, 2021. As a foreign limited liability company in California, True Bullion remains an active entity in good standing with both the Secretary of State and the Franchise Tax Board. True Bullion and its d//b/a GSI Exchange are authorized to do business in California.**

16. On or about August 14, 2019, Defendant GSI Exchange, LLC announced it was opening its first regional office in Dallas, Texas; however, it never filed or organized as a domestic or foreign limited liability company with the Texas Secretary of State.

**Answer: Admit.**

17. Defendant GSI Exchange, LLC is both directly and vicariously liable to Ms. Dugger, the latter pursuant to *respondeat superior* for the actions of Defendants Anderson and Parker within the course and scope of their employment.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

18. Defendant Crypto Knight, LLC organized as a limited liability company in the state of California on June 22, 2017. Its registered address is at Suite 255 in the same office complex at 26635 Agoura Road in Calabasas where Defendant GSI purports to be located.

**Answer: Admit.**

19. Defendant Crypto Knight, LLC is both directly and vicariously liable to Ms. Dugger, the latter pursuant to *respondeat superior* for the actions of Defendants Anderson and Parker within the course and scope of their employment.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

20. Defendant IRA Bitcoin, LLC appears to have organized on March 30, 2018, listing a registered address at 5023 Parkway, Calabasas, CA 91302. However, the California Secretary of State does not show any record of an LLC by this name.

**Answer: Denied. IRA Bitcoin, LLC is a d/b/a of Crypto Knight, LLC.**

21. To the extent it exists as a standalone entity, Defendant IRA Bitcoin, LLC is both directly and vicariously liable to Ms. Dugger, the latter pursuant to *respondeat superior* for the actions of Defendants Anderson and Parker within the course and scope of their employment.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

22. As opposed to Defendant GSI (http://gsiexchange.com), neither Crypto Knight nor IRA Bitcoin appear to maintain an active presence on the internet.

**Answer: Admit.**

## JURISDICTION

23. Jurisdiction is proper in New Mexico as all Defendants have transacted business within this state and purposely availed themselves of the protection of the laws of New Mexico, thereby creating sufficient minimum contacts for the district court to asset personal jurisdiction over them.

**Answer: Denied.**

24. Jurisdiction is further proper because, through this action, Ms. Dugger seeks to vindicate her rights under New Mexico law in New Mexico state court.

**Answer: Denied.**

25. Venue is proper in this Court pursuant to N.M. STAT. ANN. § 38-3-1. Moreover, a substantial part of the acts and omissions giving rise to the claims set forth in this Complaint occurred in Bernalillo County, New Mexico in furtherance of Defendants' business interests.

**Answer: Denied.**

## STATEMENT OF FACTS

I. **Defendants exploited Ms. Dugger's trust by recommending an unsuitable, volatile investment; failing to provide her with a contract documenting the terms of her purchase; charging her a usurious commission which they did not disclose; and doing so at the worst possible time.**[1]

26. A longtime investor in precious metals because she liked their relative price stability, Ms. Dugger had been a customer of Defendant GSI for almost one year prior to the purchase which is the subject matter of this Complaint. On occasion, she would correspond with

---

[1] Defendants deny the allegations in this heading.

7

Defendants Anderson and Parker via email and telephone regarding offerings by Defendants GSI and IRA Bitcoin.

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph regarding Plaintiff's investment history and preferences. The remaining allegations in this Paragraph are admitted.**

27.  At all times relevant to this Complaint, Defendants were aware that Ms. Dugger is a trusting person and not a professional investor.

**Answer: Denied.**

28.  Throughout the entirety of her time as a customer of Defendant GSI, Ms. Dugger continuously received promotional emails from addresses affiliated with Defendants GSI and IRA Bitcoin. These emails almost always contained sensational claims about the global economy designed to persuade the recipient to buy gold and silver through GSI, or cryptocurrency through IRA Bitcoin.

**Answer: Defendants admit only that Plaintiff received such automated promotional e-mails through their marketing and customer relationship management software. The remaining allegations in this Paragraph are denied.**

29.  For example, on November 21, 2019, Ms. Dugger received an email from info@gsiexchange.com that said: "Rosabella, Google Search "China + Gold-Backed + Cryptocurrency" Now. This would **sink the value of the dollar by as much as 80%!**" (emphasis in original).

**Answer: Admit.**

30.  Several months before her December 2017 Bitcoin purchase, Ms. Dugger had been in contact with Defendant Anderson regarding an annuity Ms. Dugger had purchased from a third-party company.

**Answer: Admit.**

31.  At various times between April and November 2017, Defendant Anderson attempted to persuade Ms. Dugger to invest her annuity proceeds in Bitcoin through Defendant Anderson's companies.

**Answer: Denied.**

32.  Upon receiving the final annuity payout amount and trusting Defendant Anderson implicitly, Ms. Dugger wired $50,000 at Defendant Anderson's direction to Defendant Crypto Knight on December 11, 2017.

**Answer: Defendants admit only that Plaintiff wired $50,000 to Defendant Crypto Knight on December 11, 2017. All remaining allegations are denied.**

33.  Determined to pursue personal gain at the expense of his elderly customer's wellbeing, Defendant Anderson succeeded in persuading Ms. Dugger to buy Bitcoin even though it was approaching its market cycle peak, having already appreciated roughly 1,500% throughout 2017.

**Answer: Denied.**

34.  In so doing, Defendant Anderson exploited Ms. Dugger's unfamiliarity with digital asset volatility and lack of awareness that Bitcoin was highly likely to experience an imminent and significant collapse in price.

**Answer: Denied.**

35.  Upon information and belief, Defendants Anderson and Parker were aware that Ms. Dugger was unsophisticated in digital asset investing.

**Answer: Denied.**

36.  After subtracting their 15% commission, which caused Ms. Dugger an immediate loss of $7,500, Defendants proceeded to purchase 2.5172 BTC with the remaining $42,500 at an average price of $16,883 per BTC.

9

**Answer: Defendants admit that they subtracted their 15% commission and purchased 2.5172 BTC with the remaining $42,500 at an average price of $16,883 per BTC. All remaining allegations are denied.**

37. Even though it would have been trivial for them to do so, at no time did the Defendants or anyone else provide Ms. Dugger with a written purchase agreement from any of the Defendant Companies setting forth the terms of her investment.

**Answer: Denied. See Exhibit A; the Investment Direction Form—provided by Defendants and signed by Plaintiff on December 12, 2017—the terms of her investment, including the 15% transaction fee of $7,500 and the Bitcoin quantity purchased with the remaining $42,500 (2.51721031 BTC at $16,883 per BTC).**

38. Defendants never told Ms. Dugger that she would be charged a 15% commission on her purchase, nor the reason for such a charge.

**Answer: Denied. See Exhibit A.**

39. By charging Ms. Dugger an unreasonable, undisclosed commission, Defendants caused Ms. Dugger to purchase 0.4444 fewer Bitcoin than she would otherwise have.

**Answer: Denied.**

40. Had Ms. Dugger known of the 15% commission, she would have reconsidered her Bitcoin purchase.

**Answer: Defendants deny that Plaintiff was unaware of the 15% transaction fee. See Exhibit A. Additionally, Defendants lack the knowledge and information sufficient to form a belief on the remaining allegations in this Paragraph.**

41. Within two months of her purchase, Bitcoin had declined by 50%. On December 15, 2018, Bitcoin reached its market cycle low of $3,222.

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph, and therefore deny this Paragraph.**

42. One year after Ms. Dugger's $50,000 investment, it had attained a market value of $8,110, representing an 83.78% decline.

10

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph, and therefore deny this Paragraph.**

43. Defendants' sale of Bitcoin to Ms. Dugger was generally unsuitable for the simple reason that a person in their late 70s may not have enough time to recover from a nearly -84% return on investment.

**Answer: Denied.**

II. **Defendants' failure to provide Ms. Dugger with a written disclosure accompanying her investment ultimately confused Ms. Dugger and prevented her from meaningfully understanding the material risks inherent in digital asset investing, namely, those pertaining to custody.[2]**

44. Ms. Dugger knew that one of the Defendant Companies would purchase Bitcoin on her behalf and hold it, although she was never certain which company or the mechanics of such custody.

**Answer: Denied. Defendants disclosed to Plaintiff that IRA Bitcoin, a d/b/a/ of Crypto Knight would carry out the Bitcoin transaction. See <u>Exhibit A</u>. Additionally, Defendants intended to transfer the Bitcoin to Plaintiff for self-custody, and made numerous attempts to do so.**

45. Defendant Anderson's email signature only advertised his position with Defendant GSI, even though he is the control person for all Defendant Companies; likewise, Defendant Parker's email signature purported to belong only to Defendant IRA Bitcoin even though he regularly did work on behalf of Defendant GSI.

**Answer: Denied. Defendants Anderson and Parker have positions within both True Bullion and Crypto Knight, and, accordingly, within both their d/b/a entities (GSI and IRA Bitcoin).**

---

[2] Defendants deny the allegations in this heading.

46. Upon information and belief, Defendants Anderson and Parker were working together so closely as to render any corporate separateness between Defendants GSI and IRA Bitcoin meaningless.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

47. Though not frequently mentioned to Ms. Dugger, upon information and belief, Defendant Crypto Knight played a central role in the purchase and custody of Ms. Dugger's Bitcoin.

**Answer: Denied. Defendants disclosed to Plaintiff that IRA Bitcoin, a d/b/a/ of Crypto Knight would carry out the Bitcoin transaction. See <u>Exhibit A</u>. Additionally, Defendant Crypto Knight d/b/a IRA Bitcoin only became involved in custody following numerous, unsuccessful attempts to transfer the Bitcoin to Plaintiff for self-custody. Plaintiff failed to provide the appropriate address or effectuate the transfer.**

48. Just as Defendants exploited Ms. Dugger's inexperience with digital asset volatility to sell Bitcoin to her at an inopportune time, so too did they fail to make her aware of the risks involved in permitting an unlicensed, inexperienced third-party to arrange custody of her Bitcoin on her behalf.

**Answer: Denied.**

49. Unlike most traditional financial assets, digital assets and cryptocurrencies are bearer instruments by nature. This enables them to be stored by their owner (or a designee who possesses the corresponding private key) in a cryptographically secure manner while remaining resistant to censorship and confiscation through the elimination of intermediaries.

**Answer: Admit.**

50. Upon information and belief, Defendants intended to transfer Ms. Dugger's Bitcoin to her at some point so that she could self-custody it and they could be free of custodial liability, but they never managed to do so.

**Answer: Defendants admit that it was their intention to transfer Plaintiff's Bitcoin to her for self-custody. Defendants made numerous attempts to do so, but Plaintiff failed to provide the appropriate address.**

51. Because of Defendants' failure to apprise Ms. Dugger of material custodial risks, she was unaware that digital assets can be irreparably lost if the private key required to spend or otherwise move them is compromised. As a result, she was unable to meaningfully assess the risk of permitting Defendants to custody her Bitcoin.

**Answer: Denied.**

52. Had she been aware of the ease with which her Bitcoin could be irreparably lost through error or incompetence, Ms. Dugger would have either hired a qualified custodian herself or enlisted the assistance of her son who possessed sufficient knowledge regarding computers to competently help her.

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph, and therefore deny the allegations of this Paragraph.**

53. Defendants' omission of these material risks caused Ms. Dugger to take on outsized custodial hazards that she would not otherwise have accepted.

**Answer: Denied.**

54. Defendants knew that Ms. Dugger placed immense trust in Defendants' ability to competently administer her holdings.

**Answer: Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph, and therefore deny this Paragraph.**

55. Defendants exploited Ms. Dugger's trust in order to sell her a product she did not understand.

**Answer: Denied.**

13

III.   **Defendants lost Ms. Dugger's Bitcoin sometime prior to August 26, 2020, but intentionally withheld this information until August 16, 2021, almost a full year later, when Ms. Dugger attempted to sell her holdings.[3]**

56.  Defendants stored Ms. Dugger's Bitcoin in a wallet that could only be accessed through a Ledger Nano device.

**Answer: Denied.**

57.  Ms. Dugger's attempts to liquidate her Bitcoin position in August 2021 are well-documented.

**Answer: Admit that Plaintiff attempted to liquidate her Bitcoin in August 2021. All remaining allegations are denied.**

58.  In an email to Ms. Dugger dated July 28, 2021, Defendant Parker stated in response to her requests for information about Bitcoin liquidation strategies, "[...] you don't have to go all or nothing when it comes to a BTC liquidation. [...] At Bitcoin's current price you could liquidate just over 1/2 of your coins and have your initial $50,000 covered and out of the market [...]."

**Answer: Admit that the preceding words appeared in an email between Plaintiff and Defendant Parker. All remaining allegations are denied.**

59.  Ms. Dugger not only wished to cover her initial investment but to exit her entire position, and she conveyed this fact to Defendants. Yet, Defendants persisted in their dilatory tactics, causing Ms. Dugger growing unease.

**Answer: Denied that Defendants engaged in "dilatory tactics." Defendants are without the knowledge and information sufficient to form a belief about the truth of the allegations in this Paragraph related to Plaintiff's intentions and her alleged unease, and therefore deny those allegations. All remaining allegations are denied.**

60.  On August 16, 2021, Defendant Parker wrote to Ms. Dugger again. Ms. Dugger's consternation had reached such a degree that she even went so far as to request proof that her

---

[3] Defendants deny the allegations in this heading.

Bitcoin had ever been purchased in the first place. Towards the middle of his email explaining the situation, Defendant Parker really got to the point:

> "To restate the current issues we are facing, this was caused by multiple oversites [sic] working in tandem from multiple companies. The event that kicked it all off was when Ledger's line of "Blu" Digital Hardware Wallets suffered from a failed firmware update, the update was initiated by the manufacturer (Ledger), and ultimately ended up rendering the device nonfunctional. Once we secured a replacement device, we faced our second & current issue. To reactivate the data that was stored on the previous device (Gaining Access to the stored Cryptocurrency), it requires successfully inputting a 24-word mnemonic code. [...] *Unfortunately, in the case of our stored mnemonic, at some point, the last two words of the 24-word mnemonic had become damaged and left illegible.*"

(emphasis added)

**Answer: Admit that the preceding words appeared in an email between Plaintiff and Defendant Parker. All remaining allegations are denied.**

61. In short, despite utilizing the passive voice, Defendant Parker grudgingly admitted for the first time that Defendants had caused Ms. Dugger's Bitcoin to become permanently inaccessible.

**Answer: Denied.**

62. In an ill-fated attempt at showing Ms. Dugger, he was on top of things, Defendant Anderson forwarded her a thread of a conversation he had had with the Ledger company, the maker of the now-nonfunctional hardware wallet. In one poignant passage, Defendant Anderson wrote to the company: "Please help! I am willing to pay a $10,000 reward for assistance in opening this wallet."

**Answer: Defendants admit only that Defendant Anderson forwarded Plaintiff a thread that included the sentence quoted in this Paragraph. The remaining allegations in this Paragraph are denied.**

63. When the Ledger company representative responded to Defendant Anderson that little could be done, Defendant Anderson replied: "There has to be a white hat solution to get 2 words,

15

right? I am willing to pay a 10k bounty to a solution finder! Any ideas are appreciated..."

**Answer: Admit that the preceding words appeared in an email between Plaintiff and Defendant Anderson. All remaining allegations are denied.**

64. In his email, Defendant Anderson made remarks suggesting that he has always understood the technical side of the problem he created and the risks to which he willfully exposed Ms. Dugger.

**Answer: Denied.**

65. However, when he forwarded this conversation to Ms. Dugger, Defendant Anderson must not have realized that he was telling on himself. The date and time stamp on his initial panicked message to the Ledger company revealed that the problem had actually arisen nearly a full year ago on August 26, 2020.

**Answer: Denied.**

66. In other words, Defendants Anderson, Parker, and the Defendant Companies had actively deceived Ms. Dugger for over a year until they were finally obligated by circumstances to admit the truth.

**Answer: Denied.**

67. Her trust shattered, what followed were an unfortunate series of half-truths and other tactics clearly designed to buy time and convince Ms. Dugger to bear the burden for Defendants' wrongdoing.

**Answer: Denied.**

68. In total, two years and four months have passed since Defendants permanently lost Ms. Dugger's property.

**Answer: Denied.**

69. Defendants claim that they are working on a solution to uncover the missing two words required to complete the mnemonic and restore access to Ms. Dugger's Bitcoin, but they have failed to provide any proof to substantiate these alleged efforts.

**Answer: Denied.**

70. Defendants continue to ignore Ms. Dagger's demands for compensation.

**Answer: Denied. Until the start of this litigation, Defendants responded to each and every communication from Plaintiff.**

### IV. Defendants have a track record of charging unreasonably high commissions to senior citizens.[4]

71. In contemporaneous conduct nearly identical to the allegations documented in this Complaint, Defendants Anderson and GSI were found to have engaged in what the Alabama Securities Commission and the Texas State Securities Board referred to as an "illegal nationwide advisory scheme."

**Answer: Denied.**

72. In furtherance of the scheme, Defendants would instruct senior citizen customers to liquidate securities and other investments (such as annuities) in order to subsequently invest the proceeds in precious metals sold by OSI, all while charging exorbitant commissions up to 30%.

**Answer: Denied.**

73. This "illegal nationwide advisory scheme" appears to be Defendants' entire business model.

**Answer: Denied.**

74. The sole reason why Defendants' nearly identical conduct towards Ms. Dugger did not also violate New Mexico's laws against acting as an unlicensed investment adviser is because

---

[4] Defendants deny the allegations in this heading.

most annuities do not meet New Mexico's definition of a "security" as set forth in N.M.

STAT ANN. § 58-13C-102(DD)(2).

**Answer: Defendants contend that the allegations in this Paragraph constitute legal
conclusions and/or legal arguments for which no admission or denial is necessary.
To the extent that a response is required, the allegations are denied.**

75. The time period corresponding to Defendants' egregious failure to apprise Ms. Dugger that

    they had lost her Bitcoin (August 2020-August 2021) is also the time period in which they

    were actively engaged in their illegal nationwide advisory scheme.

**Answer: Denied.**

76. Upon information and belief, additional instances of outrageous conduct by Defendants are

    likely to be revealed in discovery.

**Answer: Denied.**

**FIRST CAUSE OF ACTION**
**Fraud**
**(All Defendants)**

77. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

**Answer: Defendants incorporate all its preceding and succeeding answers as if fully set forth
herein.**

78. Defendants misrepresented or omitted to Ms. Dugger that she would not be charged a 15%

    commission, thereby causing Ms. Dugger to believe that the full amount of her December 11,

    2017, wire transfer to Defendants for $50,000 would be invested in Bitcoin, which was not

    true.

**Answer: Denied. See Exhibit A.**

79. Defendants knowingly or recklessly misrepresented or omitted the information that they were

    going to charge her a 15% commission.

**Answer: Denied. See Exhibit A.**

80. Defendants misrepresented or omitted this information, intending to deceive Ms. Dugger and to induce her reliance upon it, as it would make her more likely to go through with the purchase.

**Answer: Denied. See <u>Exhibit A</u>.**

81. Ms. Dugger did in fact rely on Defendants' misrepresentation or omission.

**Answer: Denied.**

82. As a result of Defendants' misstatement or omission, Ms. Dugger was deprived of $7,500, amounting to an additional 0.4444 BTC she would have received but for the 15% commission.

**Answer: Denied. See <u>Exhibit A</u>.**

## SECOND CAUSE OF ACTION
### Fraud
### (All Defendants)

83. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

**Answer: Defendants incorporate all its preceding and succeeding answers as if fully set forth herein.**

84. Defendants misrepresented or omitted to Ms. Dugger that she could sell her Bitcoin at will, when in truth, her holdings could not be sold or transferred after August 2020.

**Answer: Denied.**

85. Defendants misrepresented or omitted this information knowingly or recklessly by waiting until August 2021 to convey it to Ms. Dugger.

**Answer: Denied.**

86. Defendants misrepresented or omitted this information intending to deceive Ms. Dugger and to induce her reliance upon it.

**Answer: Denied.**

19

87.  Ms. Dugger did in fact rely on Defendants' misrepresentations or omissions.

**Answer: Denied.**

88.  As a result of Defendants' misstatement or omission, Ms. Dugger was deprived of 2.5172

BTC, amounting to her entire investment, plus the additional 0.4444 BTC she would have

received but for the 15% undisclosed commission, as well as capital gains thereupon had she

been able to sell her Bitcoin at the time of her choosing on August 31, 2021.

**Answer: Denied.**

89.  Had Ms. Dugger been able to sell the entire 2.9616 BTC she should have had on August 31,

2021, she would have received $144,843, an amount which is equal to her initial investment

of $50,000 plus $94,843 in profits.

**Answer: Defendants deny that Plaintiff "should have had" 2.9616 BTC on August 31, 2021.
All remaining allegations are denied.**

### THIRD CAUSE OF ACTION
### Negligence
### (All Defendants)

90.  Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

**Answer: Defendants incorporate all its preceding and succeeding answers as if fully set forth
herein.**

91.  Defendants knew that they were entrusted with Ms. Dugger's 2.5172 BTC, and that such

custody required strict compliance with all safeguards to avoid loss of funds, namely,

ensuring all 24 words of the mnemonic phrase corresponding to the wallet holding Ms.

Dugger's Bitcoin were legible and kept in safe place.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal
conclusions and/or legal arguments for which no admission or denial is necessary.
To the extent that a response is required, the allegations are denied.**

92. By allowing the last two words of this mnemonic phrase to become obliterated and illegible, an event which does not ordinarily occur in the absence of negligence, Defendants breached their duty to custody Ms. Dugger's Bitcoin in a reasonably prudent manner.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

93. As a result of Defendants' failure to use ordinary care in custodying Ms. Dugger's Bitcoin, Ms. Dugger suffered the loss of 2.5172 BTC, amounting to her entire investment, in addition to the capital gains she would have received had she been able to sell her Bitcoin at the time of her choosing.

**Answer: Denied.**

94. Ms. Dugger also suffered the loss of 0.4444 BTC, plus capital gains thereupon, which she should have received but for Defendants' 15% undisclosed commission.

**Answer: Denied. Again, the 15% transaction fee was disclosed in writing on the Investment Direction Form, which Plaintiff signed. See <u>Exhibit A</u>.**

95. Had Ms. Dugger been able to sell the entire 2.9616 BTC she should have had on August 31, 2021, she would have received $144,843, an amount which is equal to her initial investment of $50,000 plus $94,843 in profits.

**Answer: Defendants again deny that Plaintiff "should have had" 2.9616 BTC on August 31, 2021. All remaining allegations are denied.**

### FOURTH CAUSE OF ACTION
### Breach of Contract
### (All Defendants)

96. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

**Answer: Defendants incorporate all its preceding and succeeding answers as if fully set forth herein.**

97. Despite the lack of a written agreement, Ms. Dugger relied on Defendants' promises as well as their compliance with the implied covenant of good faith and fair dealing applicable to every contract in New Mexico.

**Answer: Denied. See <u>Exhibit A</u>.**

98. In particular, Ms. Dugger relied on Defendants' implied and express promises to sell Bitcoin to her at a commercially reasonable rate and to competently custody her Bitcoin until such time as she disposed of it.

**Answer: Denied.**

99. Ms. Dugger is entitled to the benefit of her bargain.

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

100. By having relied on Defendants' implied and express promises, Ms. Dugger lost 0.4444 BTC due to Defendants' undisclosed commission and an additional 2.5172 BTC due to their failure to properly custody and dispose of her assets.

**Answer: Denied.**

101. Ms. Dugger is entitled to recover value equal to the 2.9616 BTC she would have had but for Defendants' first breach as well as lost profits proximately caused by their second breach as of August 31, 2021, i.e., $144,843.

**Answer: Defendants again deny that Plaintiff "would have had" 2.9616 BTC on August 31, 2021. All remaining allegations are denied.**

**FIFTH CAUSE OF ACTION**
**Unconscionable Trade Practice**
**Or, in the alternative, Unfair or Deceptive Trade Practice**
**(All Defendants)**

102. Plaintiff incorporates all preceding and succeeding allegations as if fully set forth herein.

22

**Answer: Defendants incorporate all its preceding and succeeding answers as if fully set forth herein.**

103. When selling Bitcoin to Ms. Dugger in the manner set forth herein, Defendants engaged in an act that detrimentally took advantage of Ms. Dugger's lack of knowledge, ability, experience or capacity to a grossly unfair degree; or, resulted in a gross disparity between the value received by Ms. Dugger and the price she paid, contrary to N.M. STAT. ANN. § 57-12-2(E).

**Answer: Denied.**

104. Or, in the alternative, Defendants, in the regular course of business, knowingly made false or misleading oral or written statements in connection with the sale of Bitcoin to Ms. Dugger that could have. tended to or would have deceived or misled any person. Such prohibited conduct by Defendants includes, but is not limited to:

- Making false or misleading statements of fact concerning the price of goods or services, contrary to N.M. STAT. ANN. § 57-12-2(D)(11);

- Using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive, contrary to N.M. STAT. ANN § 57-12-2(D)(14); and

- Failing to deliver the quality or quantity of goods or services contracted for, contrary to N.M. STAT. ANN. § 57-12-2(D)(17).

**Answer: Denied.**

105. Ms. Dugger suffered a loss of personal property as a result of Defendants' employment of a method, act or practice declared unlawful by the Unfair Practices Act. Accordingly, she is entitled to actual damages or, upon a showing of Defendants' willfulness, treble damages pursuant to N.M. STAT. ANN. § 57-12-10(B).

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

106.   In the event she prevails on this cause of action, Ms. Dugger is moreover entitled to payment of her attorney's fees and costs pursuant to N.M. STAT. ANN. § 57-12-10(C).

**Answer: Defendants contend that the allegations in this Paragraph constitute legal conclusions and/or legal arguments for which no admission or denial is necessary. To the extent that a response is required, the allegations are denied.**

## AFFIRMATIVE AND OTHER DEFENSES

Defendants Anthony Anderson, Travis Parker, True Bullion, LLC d/b/a GSI Exchange, LLC, Crypto Knight, LLC, and IRA Bitcoin, LLC (collectively, the "Defendants"), by and through their attorneys, Affordable Law, P.C., and for their defenses to Plaintiff's First Amended Complaint, assert as follows:

### FIRST DEFENSE

1.   Plaintiff's claims are barred, in whole or in part, by Plaintiff's assumption of her own risk.

### SECOND DEFENSE

2.   Plaintiff's claims are barred, in whole or in part, by the doctrine of contributory negligence.

### THIRD DEFENSE

3.   Plaintiff's claims are barred, in whole or in part, for her failure to name a necessary party.

### FOURTH DEFENSE

4.   Plaintiff's claims are barred, in whole or in part, for her failure to name all real parties in interest.

## FIFTH DEFENSE

5.  Plaintiff's claims are barred, in whole or in part, for her failure to plead fraud with

   particularity.

## SIXTH DEFENSE

6.  If Plaintiff has sustained damages, those damages are incorrectly valued.

## SEVENTH DEFENSE

7.  If Plaintiff has sustained damages, Plaintiff failed to mitigate those damages.

## EIGTH DEFENSE

8.  Plaintiff failed to state a claim which relief requested may be granted and this action

   is therefore barred.

## NINTH DEFENSE

9.  Defendant reserves the right to assert additional defenses and/or supplement and amend this

   answer upon the discovery of more definite facts.


   WHEREFORE, by reason of the foregoing, Defendants hereby respectfully request the

following relief:

   a.  Dismissing the Amended Complaint with prejudice;

   b.  Costs of suit; and

   c.  Such other and further relief as the court deems just and proper.

Respectfully Submitted,

/s/ Matthew Gandert
Matthew Gandert
Affordable Law, P.C.
1128 Pennsylvania Street NE
Suite 210
Albuquerque, NM 87110
PH: 505-255-4859
FX: 505-212-0440
Dated: March 9, 2023                    matt.leshinlawoffice@gmail.com
*One of the Attorneys for Defendants*


# CERTIFICATE OF SERVICE

The undersigned is an attorney, on oath, hereby stating that the attached Defendants' **Answer to First Amended and Affirmative Defenses** was electronically filed on **March 9, 2023** with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered counsels of record and caused a copy of the above and foregoing document to be sent via e-mail to the following attorney:

To:    Matthew J. Bouillon Mascareñas

       Law Office of Matthew J. Bouillon Mascareñas, LLC
       500 Marquette Avenue NW, Suite 1200
       Albuquerque, New Mexico 87102
       (505) 317-6953
       matt@mjbm.law

/s/ Matthew Gandert
[X] The undersigned certifies, under penalty of perjury, that the foregoing is true and correct or on information and belief, certifies that he verily believes the same to be true.

# EXHIBIT A

DocuSign Envelope ID: 3698/7B7-A4BD-4579-A865-F09E0C1063C2

# INVESTMENT DIRECTION FORM

The purpose of this form is to confirm the exact distribution of funds wired from IRA Bitcoin Clients. This form will only be valid after a confirmation that the customer funds have been sent to IRABTC and the Customer Agreement has been mutually executed by both the customer and IRABTC. A signature of this Digital Price Lock Agreement will act as a mutual agreement by both the customer and IRABTC on the allocation of IRABTC funds to place a hedge in the spot market to ensure the customers purchase of Cryptocurrency will not be subject to price fluctuation during any interim time between the execution of the Client Agreement and the reception of Customer funds. Additionally after the hedge trade is placed, and once funds have been received; the quantity purchased might be subject to fluctuations based on the market volatility in the exchange rate between USD and selected cryptocurrency within the 24 hour time frame from Price Verification and the actual time of purchase of said Cryptocurrencies.

Overview:

| Symbol | Action Type | Asset Description | Market Price | Quantity | Transaction Fee | Total |
|---|---|---|---|---|---|---|
| BTC/USD | BUY | Bitcoin | $16,883.00 | 2.51721031 | | $42,500.00 |

| | | | | | Total | $7,500.00 | $50,000.00 |

Have The Coins Already Been Purchased?    Yes          *If coins have been purchased then all numbers are final

Printed Customer Name: _____ gger          Printed IRA Bitcoin Director Name: Travis Parker

Signature:  *Isabella Dugger*          Date: 12/12/2017          Signature: _____    Date: 12/11/2017

Bitcoin Wallet Address: TREZOR (Hardware Wallet)

*The Price reflected in "Market Price" is a reflection of the spot market where the digital currency price will be hedged at only. This is not an exchange rate price, and may differ from actual exchange rate.

1

# EXHIBIT B

# Entity Status Letter

Date:    03/03/2023
ESL ID: 5812628527

## Why You Received This Letter

According to our records, the following entity information is true and accurate as of the date of this letter.

Entity ID:  201425210488

Entity Name:  TRUE BULLION LLC

☒   1.   The entity is in good standing with the Franchise Tax Board.

☐   2.   The entity is **not** in good standing with the Franchise Tax Board.

☐   3.   The entity is currently exempt from tax under Revenue and Taxation Code (R&TC) Section 23701 .

☐   4.   We do not have current information about the entity.

☐   5.   The entity was administratively dissolved/cancelled on _____ through the Franchise Tax Board Administrative Dissolution process.

## Important Information

- This information does not necessarily reflect the entity's current legal or administrative status with any other agency of the state of California or other governmental agency or body.
- If the entity's powers, rights, and privileges were suspended or forfeited at any time in the past, or if the entity did business in California at a time when it was not qualified or not registered to do business in California, this information does not reflect the status or voidability of contracts made by the entity in California during the period the entity was suspended or forfeited (R&TC Sections 23304.1, 23304.5, 23305a, 23305.1).
- The entity certificate of revivor may have a time limitation or may limit the functions the revived entity can perform, or both (R&TC Section 23305b).

## Connect With Us

Web:        **ftb.ca.gov**
Phone:      800-852-5711 from 7 a.m. to 5 p.m. weekdays, except state holidays
            916-845-6500 from outside the United States

California
Relay Service:   711 or 800-735-2929 (For persons with hearing or speech impairments)

FTB 4263A WEB (REV 12-2019)